# IN THE SUPREME COURT OF CALIFORNIA

JULIA C. MEZA,

Plaintiff and Appellant,

v.

PORTFOLIO RECOVERY ASSOCIATES, LLC, et al.,

Defendants and Respondents.

S242799

Ninth Circuit
15-16900

Northern District of California
5:14-cv-03486-LHK

February 15, 2019

Chief Justice Cantil-Sakauye authored the opinion of the court, in which Justices Chin, Liu, Corrigan, Kruger, Groban, and Jenkins[*] concurred.

---

[*] Associate Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

MEZA v. PORTFOLIO RECOVERY ASSOCIATES, LLC

S242799

Opinion of the Court by Cantil-Sakauye, C. J.

This state recognizes a subset of civil actions, known as limited civil cases, in which the amount in controversy does not exceed $25,000 and the parties seek only certain types of relief. (See Code Civ. Proc., § 85.)[1]  The rules in limited civil cases concerning subjects such as pleading, discovery, and the presentation of evidence differ in some respects from the procedures followed in other civil matters.  As indicated by their shared heading within the code, "Economic Litigation for Limited Civil Cases" (§§ 90-100), these departures from normal procedural practices are designed to make it more affordable to pursue and defend actions falling within the limited civil classification.

This case involves one of the economical litigation rules. Statements made outside of trial are generally regarded as hearsay when they are offered for their truth (see Evid. Code, § 1200, subd. (a)), and hearsay statements are normally inadmissible unless they fit within a statutory exception to the hearsay rule (*id.*, subd. (b)).  But in limited civil cases, a sworn written statement, the contents of which otherwise might constitute inadmissible hearsay, may sometimes be admitted on the same terms applicable to live witness testimony.  One such scenario arises when a party offers into evidence an affidavit or

---

[1]    Subsequent undesignated statutory references are to the Code of Civil Procedure.

declaration (with these terms hereafter being used interchangeably) and "a copy [of the affidavit] has been served on the party against whom it is offered at least 30 days prior to the trial, together with a current address of the affiant that is within 150 miles of the place of trial, and the affiant is available for service of process at that place for a reasonable period of time, during the 20 days immediately prior to trial." (Code of Civ. Proc., § 98, subd. (a) (hereafter section 98(a)).)

We have accepted a request by the United States Court of Appeals for the Ninth Circuit to decide a question of state law associated with this provision. (See Cal. Rules of Court, rule 8.548(a).) That court asks, "Under section 98(a) . . . must the affiant be physically located and personally available for service of process at the address provided in the declaration that is within 150 miles of the place of trial?"

Upon our review of the language, purpose, and history of section 98(a), we answer this question as follows: A section 98(a) affiant's personal availability for service at an address within 150 miles of the place of trial often will be required for his or her affidavit to be admissible as evidence under that section, but such presence is not invariably necessary for all affiants. To explain, section 98's limited exception to the hearsay rule is predicated on the party or parties against whom a sworn statement is offered having an opportunity to examine the maker of the statement under oath. Section 98(a) thus requires the provision of an address within 150 miles of the place of trial at which the affiant can be lawfully served with a form of process designed to secure his or her appearance at trial, at which time the affiant can be called as a witness. Although one such type of process, a subpoena ad testificandum (i.e., a subpoena to testify), typically must be personally served, there are

exceptions to this general rule, and at least some prospective witnesses can be called to appear at trial through another form of process that does not require personal service. Section 98(a) therefore does not categorically require that *all* affiants be personally present for service at an address within 150 miles of the place of trial for a reasonable period during the 20 days prior to trial. Such personal presence is required only if it is necessary for lawful service, at the specified location, of process that directs the affiant to appear at trial, under the standard rules prescribing the pertinent types of process and how such process is to be served.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2010, defendants Portfolio Recovery Associates, LLC; Hunt & Henriques; Michael Scott Hunt; Janalie Ann Henriques; and Anthony DiPiero (hereafter collectively referred to as defendants) filed a limited civil case against plaintiff Julia Meza in San Mateo County Superior Court. Defendants sued to collect a debt from Meza. Meza had incurred this debt through a consumer credit account with Wells Fargo Bank, N.A. After Meza defaulted on the account, Portfolio Recovery Associates, LLC acquired the right to pursue the obligation and then referred the debt to Hunt & Henriques, a law firm, for collection purposes. The remaining defendants (DiPiero, Hunt, and Henriques) were attorneys with Hunt & Henriques during the relevant time period.

Prior to trial in the state court proceeding, Meza was served with a declaration bearing the caption, "Declaration of Plaintiff in Lieu of Personal Testimony at Trial (CCP § 98)." Section 98, the statute identified in the caption, provides in full as follows: "A party may, in lieu of presenting direct testimony,

offer the prepared testimony of [relevant] witnesses in the form of affidavits or declarations under penalty of perjury. The prepared testimony may include, but need not be limited to, the opinions of expert witnesses, and testimony which authenticates documentary evidence. To the extent the contents of the prepared testimony would have been admissible were the witness to testify orally thereto, the prepared testimony shall be received as evidence in the case, provided that either of the following applies: [¶] (a) A copy has been served on the party against whom it is offered at least 30 days prior to the trial, together with a current address of the affiant that is within 150 miles of the place of trial, and the affiant is available for service of process at that place for a reasonable period of time, during the 20 days immediately prior to trial. [¶] (b) The statement is in the form of all or part of a deposition in the case, and the party against whom it is offered had an opportunity to participate in the deposition. [¶] The court shall determine whether the affidavit or declaration shall be read into the record in lieu of oral testimony or admitted as a documentary exhibit."

This declaration was sworn to by Colby Eyre, who identified himself as a custodian of records for Portfolio Recovery Associates, LLC. Eyre attested that he had "personally reviewed the books and records pertaining to [Meza's] credit card account number," which revealed a balance of more than $11,000 owed on the account. Eyre also declared that "[p]ursuant to CCP § 98 this affiant is available for service of process: c/o Hunt & Henriques, 151 Bernal Road, Suite 8, San Jose, CA 95119 for a reasonable period of time, during the twenty days immediately prior to trial." Eyre's declaration did not explain how service was to occur at the 151 Bernal Road location, or what the effect of that service would be.

Meza undertook no efforts in the state court proceeding to serve Eyre with a subpoena ad testificandum at the 151 Bernal Road address, or anywhere else. For reasons not apparent in the record, the action was dismissed in July 2014, five days prior to the noticed trial date. Had the trial occurred, the place for trial identified in the clerk's notice of court trial was the Hall of Justice in Redwood City, California. As any map of the area will show, the San Jose address provided in Eyre's declaration is well within 150 miles of the Redwood City courthouse.

Meza initiated her federal action in August 2014. In her lawsuit, framed as a putative class action under the Fair Debt Collection Practices Act, 15 United States Code section 1692 et seq. (hereafter the FDCPA), Meza alleges that when Eyre submitted his section 98 declaration, both his "principal office" and his residence were located more than 150 miles from the Redwood City courthouse and that Eyre "was not reasonably available for service of process at 151 Bernal Road, Suite 8, San Jose, California 95119, between July 3, 2014, and July 22, 2014, as stated" in his declaration. Meza further alleges that "[i]t is the standard practice and policy of Defendants to use Declarations in Lieu of Personal Testimony at Trial . . . which falsely represent or imply that the declarant signor is personally available for service of process within 150 miles of the place of trial." Meza asserts that the practice of filing section 98 declarations under such circumstances represents a "false, deceptive, or misleading representation or means in connection with the collection of [a] debt" and an "unfair or unconscionable means to collect or attempt to collect [a] debt" under the FDCPA. (15 U.S.C. §§ 1692e, 1692f.)

Defendants moved for summary judgment in the federal action. In connection with that motion, defendants supplied

another declaration by Eyre in which he swore that he resided and worked in California when he signed his declaration in the state court proceeding. Defendants did not claim that Eyre would have been personally present for service of process at an address within 150 miles of the Redwood City courthouse prior to trial in the state case, however. Instead, they asserted that Hunt & Henriques would have accepted service for Eyre had Meza delivered process to the law firm, demanding that Eyre appear in person at trial. Hunt averred in a declaration that his "firm has implemented a policy of agreeing to accept service of process on behalf of declarants who submit declarations in support of our clients. We accept process that is delivered to us by any means, including mail, fax, email, overnight courier or personal delivery. . . . If our firm receives any form of written notice requesting that a declarant appear at trial, it is our policy to honor that request and treat it as satisfying the requirements of section 98 of the Code of Civil Procedure. In the event a process server or other individual arrives at our firm with any form of written notice requesting that a section 98 declarant appear at trial, our staff has been instructed to inform the individual that we are authorized to accept service, and we do, in fact, accept service of anything delivered in this fashion." Defendants further represented in their summary judgment briefing that "[h]ad Meza attempted service of process on [Hunt & Henriques], it would have been binding on Mr. Eyre and he would have been notified that he was being compelled to testify at trial."

The federal district court granted defendants' motion for summary judgment. (*Meza v. Portfolio Recovery Associates, LLC* (N.D.Cal. 2015) 125 F.Supp.3d 994, 1007 (*Meza*).) The court agreed with defendants that Eyre's declaration complied with

section 98(a), and therefore provided no basis for a claim under the FDCPA. (*Meza*, at p. 1007.) Beginning with the language of the state statute, the district court observed that section 98(a) does not explicitly demand that the affiant be physically located at the address provided, and the court did not perceive the statute's "available for service of process" language as implicitly incorporating a personal presence requirement. (*Meza*, at p. 1001.) The court read the statute as calling only for an address at which the affiant could be served by any means recognized as appropriate for service of some form of process under state law. The court noted that "[i]n California, service of process may be effected by means other than personal delivery, including by sending the documents to the mailing address of the person to be served or by delivering the documents to a person authorized to receive service of process on another's behalf." (*Ibid.*, citing §§ 415.20 [concerning service of a summons], 415.30 [same], 416.90 [same], 684.120 [concerning service under the Enforcement of Judgments Law, § 680.010 et seq.].) Thus, the district court determined, "a mailing address or other address where the affiant is authorized to be served under California law would be a current address for the affiant at which the affiant is available for service of process, satisfying the literal requirements of Section 98." (*Meza*, at p. 1001.)[2]

The district court rejected Meza's alternative interpretation of section 98(a), which would construe this

---

[2] In a footnote, the district court also opined that in light of the representations in Eyre's declaration, binding service could have occurred at the Hunt & Henriques address had Meza attempted to serve him at that location. (*Meza, supra,* 125 F.Supp.3d at p. 1002, fn. 3.)

provision as concerned with service of a particular type of process — a civil subpoena ad testificandum — for which state law expressly contemplates only personal service. (*Meza*, *supra*, 125 F.Supp.3d at pp. 1001-1002; see also §1987, subd. (a) ["the service of a subpoena is made by delivering a copy, or a ticket containing its substance, to the witness personally"].) The court regarded such a construction as not only foreclosed by the statute's plain language, but also contradicted by the available legislative history. (*Meza*, at pp. 1002-1004.)

Reviewing this history, the district court observed that as introduced in the Legislature, proposed legislation (Assembly Bill No. 3170 (1981-1982 Reg. Sess.)) (Assembly Bill No. 3170) would have permitted the use of an affidavit if a copy, "together with the current address of the affiant, has been received by the party against whom it is offered at least 15 days prior to the trial, and the affiant is subject to subpena for the trial." (*Id.*, as introduced Mar. 10, 1982, § 1.) As this bill progressed through the legislative process, it was amended to delete the reference to a subpoena. As amended, the measure provided that an affidavit could be used if "[a] copy, together with the current address of the affiant, has been served on the party against whom it is offered at least 30 days prior to the trial, and the affiant is available for *service of process* at a place designated by the proponent, within 150 miles of the place of trial, at least 20 days prior to trial." (*Id.*, as amended Apr. 21, 1982, § 1, italics added.) This revised language was ultimately enacted into law as part of the set of economical litigation laws. (See Stats. 1982, ch. 1581, § 1, p. 6229.)[3]

---

[3] As will be detailed *post*, section 98 was amended in 1983 to incorporate the current language within subdivision (a).

The district court concluded from this sequence that because the Legislature had replaced language expressly demanding that an affiant be subject to subpoena with more general "available for service of process" phrasing, an interpretation of section 98 that required a declarant to be available within a 150-mile radius for personal service of a subpoena ad testificandum would improperly " 'reinsert what the Legislature intentionally removed.' " (*Meza, supra*, 125 F.Supp.3d at p. 1003, quoting *People v. Soto* (2011) 51 Cal.4th 229, 245.)

The district court acknowledged that section 98(a) had been construed differently in *CACH LLC v. Rodgers* (2014) 229 Cal.App.4th Supp. 1 and *Target National Bank v. Rocha* (2013) 216 Cal.App.4th Supp. 1. (*Meza, supra*, 125 F.Supp.3d at p. 1005.) In *Rodgers* and *Rocha*, the Appellate Divisions of the Superior Courts of Ventura County and Santa Clara County, respectively, each had regarded the admissibility of a section 98 affidavit as conditioned on the affiant's susceptibility to effective service of a subpoena ad testificandum. (*Rodgers*, at pp. Supp. 6-7; *Rocha*, at p. Supp. 9.) The federal court rejected these rulings as being "at odds with both the plain meaning of Section 98 and its legislative history." (*Meza*, at p. 1005.) The district court also noted that unpublished decisions issued by appellate divisions of the superior courts of this state had read section 98(a) as *not* requiring the affiant's personal presence within 150 miles of the place of trial. (*Meza*, at p. 1006.)

Meza appealed. After briefing and oral argument, the Ninth Circuit posed its request that we construe section 98(a), which we have accepted.

## II. DISCUSSION

We begin with a review of pertinent background principles concerning the statutory scheme for limited civil cases, what "process" entails, and how process is to be served. Our analysis then turns to the language, purpose, and history of section 98(a). We ultimately conclude that section 98(a)'s reference to "process" refers to specific types of process that direct a prospective witness — here, the affiant — to appear at trial. Because nothing within section 98(a) or its history clearly indicates that the Legislature sought to depart from the prevailing rules specifying how service of these kinds of process is to occur, we then return to the above-referenced background principles and conclude that section 98(a) does not invariably require that the affiant be personally present for service of process at an address within 150 miles of the place of trial. Instead, personal presence at the specified address is required only if it is necessary for lawful service of process, under the conventional rules applicable to service of the relevant types of process.

### A. The Statutory Framework

Before delving into the language of section 98(a), it is helpful to review what limited civil cases are, what "process" entails under state law, and the prevailing rules governing service of process.

### 1. *Limited Civil Cases*

A limited civil case is one in which the amount in controversy does not exceed $25,000, and the relief sought is of a kind deemed suitable for this type of proceeding. (§ 85.) Limited civil cases involve some of the same procedures that generally apply in other civil matters. (§ 90.) But the

10

Legislature also has crafted procedures specific to limited civil cases, which are designed to simplify and thereby reduce the cost of pursuing and defending these actions. (See Stats. 1982, ch. 1581, § 5, p. 6230.) These distinctive procedures include the sworn statements authorized by section 98, restrictions on the types of pleadings that are permitted (§ 92), an optional case questionnaire through which a plaintiff may provide and elicit relevant case information (§ 93), and streamlined discovery procedures (§§ 94, 95). The rules for economical litigation also include a fail-safe provision; pursuant to section 91, subdivision (c), "[a]ny action may, upon noticed motion, be withdrawn from the provisions of this article [§§ 90-100], upon a showing that it is impractical to prosecute or defend the action within the limitations of these provisions."

### 2. Process and Service of Process

" 'Process' signifies a writ or summons issued in the course of a judicial proceeding." (§ 17, subd. (b)(7); see also Gov. Code, §§ 22 [defining "process" as "includ[ing] a writ or summons issued in the course of judicial proceedings of either a civil or criminal nature"], 26660 [defining "process," as used in title 3 of the Government Code, as "includ[ing] all writs, warrants, summons, and orders of courts of justice, or judicial officers"]; *Carol Gilbert, Inc. v. Haller* (2009) 179 Cal.App.4th 852, 859 [discussing what "process" involves].) A subpoena represents a commonly used form of process (Code Civ. Proc., § 1985, subd. (a)), as does a summons served upon a defendant along with a complaint (see *id.*, § 412.20).

"A subpoena is a command to appear at a certain time and place to give testimony upon a certain matter." (Black's Law Dict. (6th ed. 1990) p. 1426; see also § 1985, subd. (a) ["[t]he

process by which the attendance of a witness is required is the subpoena"].) Service of a civil subpoena "may be made by any person." (§ 1987, subd. (a).) The manner of serving a civil subpoena is specified by statute: "[T]he service of a subpoena is made by delivering a copy, or a ticket containing its substance, to the witness personally, giving or offering to the witness at the same time, if demanded by him or her, the fees to which he or she is entitled for travel to and from the place designated, and one day's attendance there." (*Ibid.*) The personal service requirement for subpoenas found in section 1987, subdivision (a) perpetuates a long-standing rule of state procedure, one that predates even the codification of state law. (See Stats. 1851, ch. 5, § 404, p. 115 ["The service of a subpoena shall be made by showing the original, and delivering a copy . . . to the witness personally"].) A strict personal service requirement for civil trial subpoenas has been justified on the ground that disobedience of a "duly served" subpoena represents a form of contempt (§ 1209, subd. (a)(10)), and the potentially severe consequences associated with a contempt finding make it especially important to ensure that a prospective witness knows that he or she has been subpoenaed to testify (*In re Abrams* (1980) 108 Cal.App.3d 685, 690). Furthermore, because personal delivery is the form of service most likely to provide notice of a demand to appear at trial, requiring personal service of a trial subpoena minimizes the likelihood that a trial will be disrupted by a subpoenaed person's failure to appear.

There are a few established exceptions to the general requirement that, in order for a party to compel a person to appear at a civil trial, that person must be personally served with a subpoena. When the subpoenaed person is a minor, the subpoena must be served on a parent, guardian, or other person

identified by statute. (§ 1987, subd. (a).) Likewise, certain public employees (such as police officers and firefighters) need not be personally served with subpoenas to secure their appearance at trial, at least when their testimony would concern matters associated with their professional duties. In these situations, effective service of a trial subpoena can occur by personal service or by "delivering two copies to [the prospective witness's] immediate superior at the public entity by which he or she is employed or an agent designated by that immediate superior to receive that service." (Gov. Code, § 68097.1, subd. (a); see also *id.*, §§ 68097.1, subd. (b), 68097.3.)

Furthermore, no subpoena at all is required for the production at a civil trial of a party, or "a person for whose immediate benefit an action or proceeding is prosecuted or defended or . . . anyone who is an officer, director, or managing agent of any such party or person." (§ 1987, subd. (b).) Such a party or person may be summoned to appear at trial through service "upon the attorney of that party or person" of "written notice requesting the witness to attend . . . a trial," with service to occur no less than "10 days before the time required for attendance unless the court prescribes a shorter time." (*Ibid.*) "The giving of the notice shall have the same effect as service of a subpoena on the witness, and the parties shall have those rights and the court may make those orders, including the imposition of sanctions, as in the case of a subpoena for attendance before the court." (*Ibid.*) The notice to attend mechanism does not oblige a person who resides outside of this

state to appear at trial, a limitation that applies to subpoenas, as well. (See § 1989.)[4]

The relative strictness of the statutory scheme for service of subpoenas becomes clear when contrasted with the rules concerning service of summons. A summons accompanying a complaint may be served personally (§ 415.10), but service by other methods is also permitted, including service by mail (§§ 415.30, 415.40) and (as a matter of last resort) by publication (§ 415.50). Also, with some parties, service may occur by providing copies of the summons and the complaint "to a person authorized [by the person to be served] to receive service of process." (§ 416.90.)

## B.  Interpretation of Section 98(a)

The question before us involves the interpretation of a statute. " 'When we interpret a statute, "[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the

---

[4]  In 1872, a trial subpoena was effective only to oblige attendance by persons residing less than 30 miles from the place of trial. (Former § 1989.) This radius was increased to 50 miles in 1915 (Stats. 1915, ch. 162, § 1, p. 330), to 100 miles in 1935 (Stats. 1935, ch. 257, § 1, p. 942), to 150 miles in 1957 (Stats. 1957, ch. 1560, § 1, p. 2918), to 500 miles in 1980 (Stats. 1980, ch. 591, § 1, p. 1603), and finally made congruent with state boundaries in 1981 (Stats. 1981, ch. 184, § 3, p. 1106). A narrow exception to section 1989 appears at Government Code section 68097.3, which applies to subpoenas served upon nonresident California Highway Patrol officers called to testify in civil actions or proceedings regarding matters associated with their professional duties.

statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." [Citation.] "Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' " (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616-617.)

Section 98(a) requires "a current address of the affiant that is within 150 miles of the place of trial," at which he or she is "available for service of process." This language admits of two different interpretations. One construction, advanced by defendants and accepted by the federal district court, would regard the statute as satisfied by the affiant providing an address at which he or she is amenable to *any* form of service recognized as appropriate for *some* type of process — such as a mailing address, regarded as suitable for service of a summons — with the consequence being that the affiant's personal presence at an address would not be required for the affiant to be "available for service of process" there. (*Ibid*.) Under a second construction, the statute could have the affiant's availability for a specific type or types of process in mind, with this process to be served in the conventional manner. Under the latter reading of section 98(a), if an affiant normally could be summoned to appear at trial only through service of a subpoena

ad testificandum, availability for personal service of this sort of process would be necessary — meaning that the affiant would need to be personally present within 150 miles of the place of trial — unless an exception to the personal service requirement were to apply.

This second construction finds support in the statute's text. The requirement that the affiant be "available for service of process" does not necessarily signify that availability for service of *any* type of process will suffice. (§ 98(a).) In fact, certain aspects of section 98 suggest that the Legislature was concerned with particular types of process and regarded conventional service rules as applicable. Section 98's alternative method of securing the admission of a hearsay statement offers one such indication of legislative intent. Section 98, subdivision (b) permits the introduction of a written statement that "is in the form of all or part of a deposition in the case," *provided* that "the party against whom it is offered had an opportunity to participate in the deposition." This limitation on the admissibility of deposition testimony conveys that such statements should be admitted only when a party against whom they are offered has already received an opportunity to develop, clarify, or challenge the testimony through examination, cross-examination, or evidentiary objections at the deposition. The two avenues of admissibility of a sworn statement within section 98 are synchronized only if section 98(a) is construed as requiring amenability to a form of process, such as a subpoena, that can secure an affiant's presence at trial. At that time, the affiant-witness can be called to testify regarding the subjects addressed in the affidavit. This testimony can function as a check on the representations made in the affidavit, much as examination or cross-examination by an opposing party in a

prior deposition might serve the same purpose when introduced in response to deposition testimony offered under section 98, subdivision (b).

Moreover, the 150-mile radius specified by section 98(a), as well as the statute's requirement that the affiant be present "at that place for a reasonable period of time, during the 20 days immediately prior to trial," reflect a concern with the affiant's physical whereabouts that is in harmony with the traditional personal service requirement for trial subpoenas. Read with personal service in mind, these provisions serve to reduce the time and expense required for a party to perform service, at least when the party resides close to the place of trial. In contrast, these terms do not resonate with a scheme such as the one defendants propose, in which a party against whom an affidavit is offered normally would have a variety of service options (such as mail service) at his or her disposal. Under that framework, parties would be expected to personally serve an affiant with process only rarely, if ever, and the same amount of postage could serve process to a witness in a given case regardless of whether he or she lived in Crescent City or Blythe. If the Legislature had such a scheme in mind, the emphasis section 98(a) places on the affiant's physical location prior to trial would be difficult — although perhaps not impossible — to explain.

Given the statute's ambiguity, the discussion below evaluates the two interpretations offered above by further considering, first, whether the purpose and history of section 98(a) convey that an affiant must be available for service of a particular type or types of process; and second, whether in enacting the law, the Legislature sought to deviate from prevailing rules that define the pertinent forms of process and how this process should be served.

*1. The Purpose and History of Section 98(a) Establish That the Statute Is Concerned with Process That Directs an Affiant To Appear at Trial*

As will be explained below, we perceive the purpose and history of section 98(a) as establishing that the statute contemplates an address at which the affiant can be served with process that directs him or her to appear at trial.

Construing section 98(a) as concerned with service of process that summons an affiant to appear at trial is logically consistent with the purpose of the affidavit procedure. A section 98 sworn statement functions as a substitute for live testimony. Conditioning the use of a section 98(a) affidavit on the affiant's availability for service of a trial subpoena or comparable process ensures that if another party disputes the contents of the affidavit, that party can insist that the affiant appear as a witness at trial and examine him or her at that time regarding the contents of the statement. If, on the other hand, the affidavit is uncontroversial, the party or parties against whom an affidavit is offered may decline to subpoena or otherwise demand the trial attendance of its author. That way, they will avoid having to pay statutory witness fees, a not insignificant consideration in limited civil cases. (See Gov. Code, §§ 68093, 68097 [addressing the payment of witness fees].)

The legislative history of section 98 corroborates that the statute's language regarding "service of process" has in mind the specific forms of legal process that direct a person to appear at trial. This history begins in 1976, when the Legislature authorized the Economical Litigation Pilot Project. With this project, the Legislature ordered the Judicial Council to conduct short-term pilot programs in two counties (Los Angeles County

and Fresno County were selected) to audition simplified procedures for use in civil cases with limited amounts in controversy. (Former §§ 1823, 1823.1, added by Stats. 1976, ch. 960, § 1, p. 2192 and repealed by Stats. 1994, ch. 146, § 26, p. 1311.) In endorsing this project, the Legislature found and declared "that the costs of civil litigation have risen sharply in recent years. This increase in litigation costs makes it more difficult to enforce smaller claims even though the claim is valid or makes it economically disadvantageous to defend against an invalid claim." (Former § 1823, added by Stats. 1976, ch. 960, § 1, p. 2192 and repealed by Stats. 1994, ch. 146, § 26, p. 1311.) The Legislature also found and declared "that there is a compelling state interest in the development of pleading, pretrial and trial procedures which will reduce the expense of litigation to the litigants and there is likewise a compelling state interest in experimentation on a small scale with new procedures to accomplish that result before those procedures are adopted statewide." (*Ibid.*)

The Legislature scripted some of the procedures that would apply in the pilot programs. Among them, the Legislature directed that "[w]ritten submissions of direct testimony shall be permitted if the court determines that such submissions will result in a saving of time for the court and counsel." (Former § 1826.6, added by Stats. 1976, ch. 960, § 1, p. 2195 and repealed by Stats. 1994, ch. 146, § 26, p. 1311.) The Legislature also instructed the Judicial Council to develop additional rules of procedure for the pilot programs. Consistent with the use of these trial efforts as laboratories for innovation, the Legislature specifically provided that these rules could, as revised in light of experience, eventually deviate from the initial framework designed by the Legislature. (Former § 1823.4,

added by Stats. 1976, ch. 960, § 1, p. 2193 and repealed by Stats. 1994, ch. 146, § 26, p. 1311.)

The Judicial Council's initial rules of court for the Economical Litigation Pilot Project provided for the limited use of documents in lieu of live testimony at trial. The rules on this subject conditioned the admissibility of written testimony on the ability of other parties to cross-examine the witness or author at trial, if such cross-examination was desired. Initially, the rules permitting the use of documents provided that "if any party, not less than 10 days before trial or 10 days after receipt of the documents, whichever date is first, delivers to the proponent of the evidence a written demand that the witness or author of a report, bill, or estimate be produced in person to testify, no statement or document shall be received in evidence . . . unless the witness is present and available for cross-examination." (Cal. Rules of Court, former rules 1741(b), 1849(b), repealed May 1, 1980.) Later, the rules were revised to permit the introduction of an affidavit only when, in addition to other conditions being satisfied, "a copy [of the affidavit], together with the current address of the affiant, has been received by the party against whom it is offered at least 15 days prior to the trial, and the affiant is subject to subpena for the trial." (Cal. Rules of Court, former rules 1741(c)(3), 1849(c)(3), repealed July 1, 1983.)

When the pilot efforts had run their course, the Legislature sought to codify some of the most effective procedural reforms developed through these programs. (See Assem. Com. on Judiciary, Analysis of Assem. Bill No. 3170 (1981-1982 Reg. Sess.) Mar. 10, 1982, p. 1.) As introduced in the Assembly, proposed legislation that would implement these procedures drew from the pilot programs in allowing the use of

affidavits in place of live witness testimony, while conditioning the admissibility of these statements on the maker's susceptibility to service of a subpoena. This measure, Assembly Bill No. 3170, originally provided that "[a]ny party may call as a witness, for direct or cross-examination, the author of any such affidavit," and further specified that an affidavit would be admissible only if "[a] copy [of the affidavit], together with the current address of the affiant, has been received by the party against whom it is offered at least 15 days prior to the trial, and the affiant is subject to subpena for the trial." (*Id.*, as introduced Mar. 10, 1982, § 1.)

This bill was amended during the legislative process. The amendments to Assembly Bill No. 3170 included the addition of the provision, now found at section 98, subdivision (b), allowing prior statements from a deposition to be introduced at trial as evidence against a party that had an opportunity to participate in the deposition. Also, language demanding that the affiant supply his or her local (i.e., within 150 miles of the place of trial) address at which he or she would be "available for service of process" prior to trial was inserted in place of the subpoena requirement, with the revised bill authorizing an affidavit when "[a] copy, together with the current address of the affiant, has been served on the party against whom it is offered at least 30 days prior to the trial, and the affiant is available for service of process at a place designated by the proponent, within 150 miles of the place of trial, at least 20 days prior to trial." (Assem. Bill No. 3170, as amended Apr. 21, 1982, § 1.) This phrasing became law later that year, after the Assembly measure was folded into a Senate bill that was then approved by both legislative bodies and signed by the Governor. (See Stats. 1982, ch. 1581, § 1, p. 6229.)

Notwithstanding the change in phrasing within Assembly Bill No. 3170, the relevant legislative materials bespeak a continued belief that the admissibility of a section 98 affidavit hinged on the affiant's availability for service of process that would direct him or her to attend trial. Significantly, a Senate Judiciary Committee Analysis of Assembly Bill No. 3170 that circulated *after* that measure was amended described the affidavit procedure as follows: "A party could, in place of presenting direct testimony, offer the testimony of witnesses in the form of affidavits or declarations under . . . penalty of perjury if — the copy of the affidavit was served on the other party at least 30 days prior to trial, and — *the affiant was available to be subpoenaed by the other party*; and — the statement was in the form of a deposition, and the other party had an opportunity to participate in the deposition." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3170 (1981-1982 Reg. Sess.) as amended Apr. 21, 1982, at pp. 4-5, italics added.)[5]

This analysis indicates that the replacement of the specific reference to a subpoena within Assembly Bill No. 3170 with more generic language referencing the affiant's availability for service of process did not reflect a rejection of the intent behind the earlier phrasing. On the contrary, although the Legislature removed the express mention of a subpoena, it replaced this language with phrasing reasonably read as communicating essentially the same standard: In order for an affidavit to be admissible under section 98(a), the affiant must be available for a form of process designed to secure his or her presence at trial.

---

[5] We construe "and," as it precedes the Committee Analysis's description of the use of deposition testimony, as in fact meaning "or." (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3170 (1981-1982 Reg. Sess.), *supra*, at p. 5.)

Although the legislative history does not provide a reason for the change in wording, the broader reference to "process" could simply recognize that the notice to attend mechanism under section 1987, subdivision (b) also can be used to procure the appearance of some potential affiants, meaning that the statute would be unduly narrow if it referenced only a subpoena.

Section 98 has since been amended, but these alterations do not suggest that the Legislature has changed its mind with regard to the issue before us. The present language of section 98 reflects amendments made one year after the statute's original enactment. (Stats. 1983, ch. 102, § 4, p. 267.) The primary purpose of these modifications was to clarify that a section 98(a) affiant had to be available for service of process within the 150-mile radius only for a reasonable period of time *within* the 20 days prior to trial, as opposed to some other time frame. The amendments also made other changes to the statute's wording. Most notably, the reference to "the" current address of the affiant in section 98(a), as enacted the prior year, was changed to "a" current address. This address also was equated with the one at which the affiant would be available for service, whereas there had been no explicit connection between the two in the original version of the statute. The legislative history for Assembly Bill No. 1474 (1983-1984 Reg. Sess.), the measure through which the Legislature revised section 98 in 1983, yields no rationale for these rephrasings, and they do not suggest any change in the Legislature's views regarding the need to supply an address at which an affiant could be effectively served with process intended to secure his or her presence at trial.

*2. Section 98(a) Does Not Implicitly Alter Prevailing Rules Regarding Service of Process*

Defendants also raise the possibility that even if section 98(a) is concerned with service of forms of process that direct an affiant to appear at trial, the Legislature intended that effective service of such process upon a section 98(a) affiant could be made through methods that would be inadequate for proper service of the same types of process in other contexts. Consistent with their position in federal court, defendants assert here that "Eyre . . . was available for service of process as required by the statute," because if Meza had attempted to serve process on Eyre at the 151 Bernal address, "the attorneys at Hunt & Henriques would have accepted service for him," and such service "would have been binding on . . . Eyre." In effect, defendants argue that simply by supplying an address at which he was assertedly "available for service of process," Eyre effectively made it so. Furthermore, defendants posit, had Meza not delivered some suitable form of process to that address prior to trial, she would have forfeited the opportunity to later object to Eyre's declaration on the ground that it did not comply with section 98(a).

Defendants' construction of the statute has some superficial appeal, but does not withstand close scrutiny. For this interpretation to be correct, section 98(a) must contemplate either a form of process not presently recognized by law or a novel method of serving the types of process implicated here. As previously noted, there are two basic mechanisms a party can employ to direct a person to attend trial: a subpoena and, when appropriate, a notice to attend. Effective use of a notice to attend is limited to situations in which the witness whose attendance is desired is a party or someone closely affiliated

with a party, as specified by statute. (§ 1987, subd. (b).) Because Eyre is neither, his appearance as a witness at trial could be secured only by a subpoena, which by law must be personally served, absent an exception — none of which applies here. We presume that the Legislature is aware of laws in existence when it enacts a statute. (*In re Greg F.* (2012) 55 Cal.4th 393, 407.) Had the Legislature sought to deviate from these basic rules regarding process and proper service with section 98(a), we believe it would have more clearly said so. (Cf. *California Cannabis Coalition v. City of Upland* (2017) 3 Cal.5th 924, 945 [invoking the general principle of statutory interpretation disfavoring repeal by implication].) Indeed, the Legislature has had little difficulty articulating different rules for service of a subpoena when it has chosen to depart from the norm of personal service. (See § 1987, subd. (a) [articulating alternative service rules when the subpoenaed person is a minor]; Gov. Code, § 68097.1, subds. (a), (b) [articulating alternative service rules for certain government employees].)

If anything, the language and history of section 98(a) indicate that the Legislature intended for litigants to work within the existing framework for service of process. As mentioned earlier, section 98(a)'s requirement that the affiant supply an address for service within 150 miles of the place of trial and be available at that place for a "reasonable period" immediately prior to trial suggests that the Legislature sought to maintain a personal service requirement for subpoenas. If, as defendants have argued, "available for service of process" (§ 98(a)) were read to connote availability through *any* method deemed acceptable for service of *any* form of process, such as mail service (§§ 415.30, 415.40), the statute's concern with the affiant's whereabouts would seem, at a minimum,

disproportionate to how often personal service likely would occur. And as also noted above, section 98 was enacted only after pilot programs had auditioned different approaches toward the use of affidavits. The original Judicial Council rules regarding affidavits incorporated an informal notice mechanism. (See Cal. Rules of Court, former rules 1741(b), 1849(b), repealed May 1, 1980.) But instead of adopting this approach, or an alternative phrasing that also would have clearly communicated a deviation from prevailing service conventions, section 98(a) refers only to an affiant's "availab[ility] for service of process." It seems doubtful that the Legislature would have adopted this generic phrasing if it had intended a wholesale break from existing service rules, even in this narrow context.

The support for defendants' interpretation of section 98(a), meanwhile, is relatively weak. Defendants note that as amended, section 98(a) references "a current address" of the affiant, as opposed to "the current address." But the use of the article "a" does not establish that section 98(a) is satisfied through the provision of any sort of address within 150 miles, regardless of whether effective service of an appropriate form of process normally could occur at that address. This phrasing is better read as simply recognizing that an affiant may have more than one address at which he or she may be personally served with a subpoena, such as different work and home addresses. Moreover, an affiant who is a party or closely affiliated with a party, and therefore falls within the parameters of section 1987, subdivision (b), might supply the address of an attorney upon whom a notice to attend could be served. The use of "a," instead of "the," is therefore consistent with the Legislature adhering to normal service practices with section 98(a).

Defendants also stress that section 98(a), like the other rules for limited civil cases, is intended to reduce the costs of litigating these matters. They observe that a construction of section 98(a) that would require most remote affiants to spend a "reasonable period" of time prior to trial at a location within 150 miles of the trial site would prove more expensive than a construction that would allow for service of process by mail or through a designated agent. Defendants may be correct that the interpretation we adopt is more expensive for the *proponents* of affidavits than their construction would be and could discourage the use of section 98(a) affidavits when remote witnesses are involved. But there is a countervailing consideration in play, as well: This form of evidence can shift a subtle but significant threshold expense upon party *opponents*.

Specifically, most witnesses who are subpoenaed to testify at a civil trial are entitled to demand up-front payment of witness fees (Gov. Code, § 68097), which include a charge of 20 cents per mile actually travelled to and from the place of trial (*id.*, § 68093). Defendants' construction of section 98(a) facilitates the use of affidavits, with the affiants then having to be subpoenaed (or summoned through a notice to attend) if an opposing party wants them to appear in person at trial. If accepted, defendants' approach would open the section 98(a) mechanism to a broader array of affiants, and thereby lead to more affidavits being offered. Given that these affiants can demand the statutory fees they are owed as witnesses, it could be prohibitively expensive for an opposing party in a limited civil case to call them to testify — particularly when affidavits from several persons are submitted. This prepayment requirement could significantly compromise the opponent's ability to pursue or defend a case, and thereby prevent them ever from recouping

these expenditures after trial as a prevailing party. (See § 1033.5, subd. (a)(7).)

The cost-shifting consequences of section 98(a) affidavits complicates any portrayal of these statements as uniformly beneficial from a cost perspective to the parties involved. We presume the Legislature weighed these costs and benefits in crafting what is, after all, an exception to generally applicable evidentiary rules. Our application of the standard tools of statutory interpretation leads us to conclude that the Legislature's response was to limit the potential shift in litigation expenses associated with the affidavit procedure by adhering to conventional service rules.

Defendants also note section 1989's qualification that residents of other states cannot be obliged to attend trial, even when served with a subpoena. They contend that a construction of section 98(a) that requires an affiant to be available for service of a form of process that, as a matter of law, compels attendance at trial would effectively prohibit section 98(a) affidavits from this out-of-state cohort — even when an affiant makes himself or herself personally present for service of process within 150 miles of the place of trial for an adequate pretrial period. But even if we were to assume that defendants are correct in viewing the geographical limitations of section 1989 as applicable to section 98(a) affiants, such a conclusion would not provide compelling support for their interpretation of the statute. Our review of the history of section 98 yields no significant indication that the Legislature was particularly

concerned with encouraging the use of affidavits from out-of-state residents.[6]

In sum, section 98(a) is concerned with types of process through which a party can summon a person to appear at trial and inherits rather than alters the basic framework of rules governing service of these forms of process. With a civil trial subpoena ad testificandum, personal delivery upon the subpoenaed person is generally required for effective service. (See § 1987, subd. (a).) Thus, when an affidavit is submitted by someone who can be directed to appear in person at trial only through such a subpoena, a local address at which the affiant is personally present for pretrial service is necessary — unless, of course, the person fits within a recognized exception to the personal service rule, in which case an address that permits proper service upon an appropriate representative will suffice. When an affiant also can be summoned to appear at trial through a notice to attend served on an attorney (§ 1987, subd. (b)), however, either a local address where the affiant will be

---

[6]     This case does not provide an occasion for determining whether, or under what circumstances, an affiant could be "available for service of process" under section 98(a) if the relevant parties and persons in a particular case agree upon service arrangements that deviate from statutory norms. (Cf. *Holt v. Nielson* (Utah 1910) 109 P. 470, 475 ["we think a witness within the distance that he could be legally required to attend court when served with a subpoena may waive the manner of service and may accept service in some other form, though not in strict compliance with the statute, and, when he does so, he will be required to respond in obedience to the subpoena the same as though served in strict conformity with the statute"].) The record reflects no such agreement here.

personally present for service of a subpoena *or* a local address of the attorney will suffice.[7]

## III. CONCLUSION

We answer the Ninth Circuit's question as follows: Section 98(a) requires an affiant to provide an address within 150 miles of the place of trial at which lawful service can be made of a form of process that directs the affiant to attend trial. Although a subpoena normally must be personally served, in some circumstances witnesses can be summoned to appear at trial without service of process upon the witness personally. Thus, section 98(a) does not categorically require that all affiants be personally present at a location within 150 miles of the place of trial for a reasonable period within the 20 days prior to trial. Such presence is required only if it is necessary for lawful service at that address of process designed to secure the affiant's attendance at trial.

---

[7] Defendants also assert that an interpretation of section 98(a) that would expose debt collectors to liability under the FDCPA would raise constitutional concerns, insofar as it would impose statutory tort liability based on acts (i.e., debt collection actions) characterized as having been taken in furtherance of the right to petition the government. To the extent this contention entails an interpretation of the FDCPA and the merits of plaintiff's claims under that statute, it lies outside of the scope of the question of state law that has been posed to us, and we do not address it here. For present purposes, it suffices to say that we do not perceive any constitutional problems with our interpretation of section 98(a), on its own.

### CANTIL-SAKAUYE, C. J.

**We Concur:**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**[*]

---

[*] Associate Justice of the Court of Appeal, First Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Meza v. Portfolio Recovery Associates, LLC

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding** XXX on request pursuant to rule 8.548, Cal. Rules of Court
**Review Granted**
**Rehearing Granted**

_____

**Opinion No.** S242799
**Date Filed:** February 15, 2019

_____

**Court:**
**County:**
**Judge:**

_____

**Counsel:**

Consumer Law Center, Inc., Fred W. Schwinn, Raeon R. Roulston, Matthew C. Salmonsen; Horwitz, Horwitz & Associates and O. Randolph Bragg for Plaintiff and Appellant.

Sharon Djemal, Robin Wetherill, Leigh E. Ferrin, Kari E. Gibson, Arthur D. Levy and Noah Zinner for East Bay Community Law Center, Public Law Center and Housing and Economic Rights Advocates as Amici Curiae on behalf of Plaintiff and Appellant.

Simmonds & Narita, Tomio B. Narita, Jeffrey A. Topor and Jennifer L. Yazdi for Defendants and Respondents.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Raeon R. Roulston
Consumer Law Center, Inc.
1435 Koll Circle, Suite 104
San Jose, CA  95112-4610
(408) 294-6100

Tomio G. Narita
Simmonds & Narita
44 Montgomery Street, Suite 3010
San Francisco, CA  94104
(415) 283-1000